# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| i2 Technologies, Inc., and<br>i2 Technologies US, Inc.,<br><br>      Plaintiffs,<br><br>      v.<br><br>Oracle Corporation, and<br>Oracle USA, Inc.,<br><br>      Defendants. | Civil Action No. 6:09-CV-194-LED<br><br>JURY TRIAL REQUESTED |

**PLAINTIFFS' MOTION TO SEVER DEFENDANTS' COUNTERCLAIMS
FOR INFRINGEMENT OF UNITED STATES PATENT
NOS. 7,107,113, 6,446,204, 7,010,523 AND 6,684,207**

# TABLE OF CONTENTS

I. WHY THE COURT SHOULD GRANT i2's MOTION ................................................... 1

II. FACTUAL BACKGROUND ........................................................................................ 2

    A. Procedural History. ............................................................................................ 2

    B. Deadlines That Expired Before Oracle Filed Its Permissive Counterclaims. ...................................................................................................... 4

    C. Upcoming Deadlines That Are Jeopardized If Oracle's Permissive Counterclaims Are Not Severed. ........................................................ 5

III. ARGUMENT AND AUTHORITIES ............................................................................ 6

    A. Oracle's Counterclaims Are Permissive. ........................................................... 6

    B. Oracle Could Have Served Its Counterclaims Earlier to Prevent Disrupting the Court's Schedule. ...................................................................... 7

    C. The Court Has Discretion to Sever Oracle's Permissive Counterclaims. ...................................................................................................... 7

    D. Severance Is Necessary To Avoid Delay, Prejudice to i2 and Jury Confusion, and To Promote Efficiency. ..................................................... 8

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Apache Products Company v. Employers Insurance of Wausau*,
 154 F.R.D. 650 (S.D. Miss. 1994) ...................................................................................8

*Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571 (5th Cir. 1995); ............................................8

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009)............................................................................................1, 3, 4

*Bibbs v. Early*, 541 F.3d 267 (5th Cir. 2008).................................................................................7

*Brunet v. United Gas Pipeline Co.*,
 15 F.3d 500 (5th Cir. 1994) ..............................................................................................8

*Capaci v. Katz & Besthoff, Inc.*,
 711 F.2d 647 (5th Cir. 1983) ............................................................................................8

*CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*,
 896 F. Supp. 505 (D. Md. 1995) .....................................................................................10

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640 (E.D. Va. 1997).........................7

*Landis v. North American Co.*, 299 U.S. 248 (1936).....................................................................7

*Minute Man Anchors, Inc. v. Oliver Technologies, Inc.*,
 2005 U.S. Dist. LEXIS 38634 (W.D. N.C. 2005)............................................................8

*Mosley v. Gen. Motors Corp.*,
 497 F.2d 1330 (8th Cir. 1974) ........................................................................................10

*Polymer Industrial Products Company v. Bridgestone/Firestone, Inc.*,
 347 F.3d 935 (Fed. Cir. 2003).........................................................................................7

*Queen Noor, Inc. v. McGinn*,
 578 F. Supp. 218 (D.C. Tex. 1984)..................................................................................7

*Roy-G-Biv Corp. v. Fanuc Ltd.*,
 2009 U.S. Dist. LEXIS 37809 (E.D. Tex. Apr. 14, 2009) ..............................................9

*Shum v. Intel Corp.*,
 499 F.3d 1272 (Fed. Cir. 2007).......................................................................................8

*United States v. O'Neil*,
 709 F.2d 361 (5th Cir. 1983). .....................................................................................7, 8

**OTHER AUTHORITIES**

FED. R. CIV. P. 12 ......................................................................................................................... 7

FED. R. CIV. P. 13 ......................................................................................................................... 6

FED. R. CIV. P. 21 ......................................................................................................................... 7

FED. R. CIV. P. 42 ......................................................................................................................... 7

Plaintiffs (counterclaim-Defendants) i2 Technologies, Inc. and i2 Technologies US, Inc. (collectively, "i2") file this motion to sever counterclaims for infringement just filed by Defendants Oracle Corporation and Oracle America, Inc. (collectively, "Oracle").

## I. WHY THE COURT SHOULD GRANT i2's MOTION

i2 initially filed this case for patent infringement against Oracle in April 2009. After requesting and receiving an extension of time to answer from i2, Oracle filed a Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, for a More Definite Statement in lieu of an answer in June 2009. [Dkt. No. 14.] Oracle based its motion on the assertion that i2's Original Complaint lacked specificity, pursuant to *Iqbal* and *Twombly*, as to the manner by which i2 was alleging Oracle's products and services infringe.[1]

Oracle chose not to answer and assert counterclaims at the time it filed its Motion to Dismiss/Motion for More Definite Statement. This was a purely tactical choice, as Oracle was permitted under the Federal Rules to file an answer and counterclaims subject to its Motion to Dismiss/Motion for More Definite Statement on June 19, 2009.

Oracle filed the permissive counterclaims for patent infringement that are the subject of this motion on April 22, 2010, one year after i2 filed this case. Oracle served its permissive counterclaims in conjunction with its original answer in this case, which it filed after the Court granted-in-part and denied-in-part Oracle's Motion to Dismiss/Motion for More Definite Statement. By making the tactical decision to wait one year from the time i2 filed its complaint to assert its permissive counterclaims for patent infringement against i2, Oracle has brought four new patents into the case after the deadlines for the Patent Rule 3.1-3.4

---

[1] Oracle's Motion to Dismiss/Motion for More Definite Stmt. 3, June 19, 2009 [Dkt. No. 14] (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ("*Iqbal*"); and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*")).

infringement and invalidity disclosures and Patent Rule 4.1 claim construction disclosures have expired. Oracle also added a party (JDA Software Group, Inc.) more than three months after the deadline to join additional parties expired. If the Court does not sever Oracle's permissive counterclaims for patent infringement, the parties will be unable to meet upcoming deadlines for claim construction as applied to Oracle's asserted patents and will have to reset the claim construction hearing and, as a result, the trial. This result is prejudicial to i2, who wishes a speedy adjudication of its patent infringement allegations against its competitor, Oracle. Through its tactics, Oracle threatens to unilaterally impose against i2 a delay in these proceedings.

## II.  FACTUAL BACKGROUND

### A.  Procedural History.

i2 is a software company with its headquarters in Texas. i2 pioneered, among other things, supply chain management software for enterprises. Many Fortune 500 companies use i2's software to manage and automate their manufacturing processes. i2 recently merged with JDA Software Group, Inc. ("JDA") and together, they employ about 1800 people.

Oracle is a direct competitor of i2 in, among other areas, supply chain management software. Oracle sells a suite of software and services that compete directly with i2. Oracle employs approximately 100,000 persons following its recent acquisition of Sun Microsystems.

On April 29, 2009, i2 filed this action for patent infringement against Oracle asserting infringement of eleven i2 patents. After service of the Original Complaint, Oracle requested a 30-day extension of time to respond, which i2 agreed to. [Dkt. No. 11, May 12, 2009.]

On June 19, 2009, Oracle chose not to answer the complaint and instead filed Oracle's Motion to Dismiss/Motion for More Definite Statement. [Dkt. No. 14.] At the time Oracle

requested the 30-day extension of time to respond to the complaint, Oracle did not tell i2 that it planned to file a motion to dismiss in lieu of an original answer. As grounds for its Motion, Oracle asserted inadequate detail in i2's Original Complaint for Patent Infringement and cited to *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). [Dkt. No. 14 at 1.]

i2 opposed Oracle's Motion to Dismiss/Motion for More Definite Statement. On September 14, 2009, while the motion was pending, i2 served its infringement contentions on Oracle which set forth, in detail, the accused Oracle products and theories of infringement.

Thereafter, the parties met and conferred over the dates for a docket control order. During the meet and confer sessions, which were numerous, Oracle never once informed i2 that it was planning to assert permissive counterclaims for patent infringement or sought to put a provision in the docket control order dealing with assertion of permissive counterclaims.

The Court ruled on Oracle's Motion to Dismiss/Motion for More Definite Statement on March 29, 2010. [Dkt. No. 79.] The Court granted-in-part and denied-in-part Oracle's Motion, requiring i2 to file an amended complaint setting forth more detail. In particular, the Court required i2 to identify asserted claims for each of the patents-in-suit, to identify accused products or services for each of the patents-in-suit, to identify which patents are indirectly infringed, and to identify a direct infringer in reference to its indirect infringement claims. *Id*. i2 filed its First Amended Complaint for Patent Infringement on April 5, 2010, earlier than the deadline given by the Court. [Dkt. No. 82.]

Oracle filed its 109-page original answer on April 22, 2010. [Dkt. No. 85.] In its original answer, Oracle denied infringement and plead, among other defenses, invalidity and unenforceability of the i2 patents. Oracle also filed a declaratory judgment compulsory

counterclaim on the i2 asserted patents essentially negativing the allegations of i2 in its original complaint. *Id*. i2 does not complain here about the timing of the above filings.

In addition to the denials, defenses, and declaratory judgment counterclaims on i2's patents, in its April 22, 2010 original answer, Oracle filed four permissive counterclaims against i2 adding four new Oracle patents to the case and contending that i2 infringes them. Oracle also adds a new party, JDA, to the case as a counterclaim-defendant. *Id.*

### B. Deadlines That Expired Before Oracle Filed Its Permissive Counterclaims.

On October 22, 2009, the Court entered its Docket Control Order in this case, based largely on agreed deadlines submitted by the parties. [Dkt. No. 52.] At the time Oracle filed its permissive counterclaims for patent infringement against i2, the following deadlines had expired:

| Date | Deadline |
| --- | --- |
| September 14, 2009 | Patent Rule 3-1 Infringement Contentions and Patent Rule 3-2 Accompanying Disclosures. |
| December 11, 2009 | Patent Rule 3-3 Invalidity Contentions and Patent Rule 3-4 Accompanying Disclosures. |
| January 8, 2010 | Join Additional Parties and Add Inequitable Conduct Allegations to Pleadings. |
| January 25, 2010 | Patent Rule 4-1 Proposed Terms and Claim Elements for Construction. |

Prior to filing its permissive counterclaims, and despite a myriad of meet-and-confers to establish agreed deadlines for the Docket Control Order, Oracle never disclosed to i2 that it intended to file counterclaims on its own patents and never sought to establish deadlines that would apply to permissive counterclaims.

### C. Upcoming Deadlines That Are Jeopardized If Oracle's Permissive Counterclaims Are Not Severed.

The following deadlines will be jeopardized if Oracle's permissive counterclaims are not severed:

| **Date** | **Deadline** |
| --- | --- |
| May 17, 2010 | Patent Rule 4-2 Preliminary Claim Constructions and Extrinsic Evidence. |
| June 14, 2010 | Patent Rule 4-3 Joint Claim Construction and Prehearing Statement. |
| July 15, 2010 | Discovery Deadline - Claim Construction Issues. |
| August 9, 2010 | Responsive Brief and Supporting Evidence. |
| September 2, 2010 | Markman Hearing. |
| December 3, 2010 | Rebuttal Expert Witness Reports Due. |
| December 21, 2010 | Discovery Deadline. |
| January 18, 2011 | Dispositive Motions Due. |
| February 17, 2011 | Pretrial Conference. |
| March 7, 2011 | Jury Selection. |
| March 14, 2011 | Jury Trial. |

### III. ARGUMENT AND AUTHORITIES

Oracle has jeopardized the agreed-upon dates in the Docket Control Order, including dates for the Markman Hearing and Jury Trial, by filing permissive counterclaims one year after i2 filed its original complaint. If the Court does not sever Oracle's permissive counterclaims, it will in effect permit Oracle to unilaterally continue the Markman Hearing and Jury Trial. That result will prejudice i2, a competitor of Oracle, who seeks an injunction.

#### A. Oracle's Counterclaims Are Permissive.

Rule 13(b) of the Federal Rules of Civil Procedure governs permissive counterclaims and provides that any counterclaim that is not compulsory is permissive. FED. R. CIV. P. 13(b). Rule 13(a) limits a compulsory counterclaim to one that "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." *Id.* Assuming, for argument's sake, the Court can acquire jurisdiction over JDA, the remaining question in determining whether Oracle's counterclaims are compulsory is whether Oracle's counterclaims arise out of the transaction or occurrence of i2's claims. *Id.* Oracle's counterclaims against i2 (other than its declaratory judgment counterclaims that merely negative i2's assertions as to its own patents) are permissive because they do not arise out of the transactions or occurrences that form the basis for i2's claims.

i2's claims relate to sales of Oracle products for infringing i2 patents; Oracle's claims relate to sales of i2 products for infringing Oracle patents. These claims give rise to different issues of fact and law that require different evidence in support and are thus permissive counterclaims arising out of different transactions and different occurrences. Therefore, there is no logical relationship between the claim and the counterclaim, and the claim preclusion doctrine

does not apply. *See Polymer Indus. Products v. Bridgestone/Firestone, Inc.*, 347 F.3d 935 (Fed. Cir. 2003) (holding that while counterclaims for patent infringement of the same patent related to the same product are compulsory, counterclaims for patent infringement related to a different product are permissive).

> B. **Oracle Could Have Served Its Counterclaims Earlier to Prevent Disrupting the Court's Schedule.**

The Federal Rules of Civil Procedure permit Oracle to file its permissive counterclaims at any time within the response period, even at the same time it filed its Motion to Dismiss/Motion for More Definite Statement on June 19, 2009. *See* FED. R. CIV. P. 13(b); *Dee-K Enterprises v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 643 (E.D. Va. 1997) (holding that "no defense under FED. R. CIV. P. 12(b) is waived by the assertion of a counterclaim, whether permissive or compulsory."). To caution against any improper waiver of its Rule 12(b) objections, Oracle could have characterized its permissive counterclaims as contingent on the denial of its Rule 12(b) objections. *See, e.g.*, *Queen Noor, Inc. v. McGinn*, 578 F. Supp. 218, 220 (D.C. Tex. 1984). Alternatively, Oracle could have filed its permissive counterclaims in a separate action and sought consolidation at a later time. FED. R. CIV. P. 42(a).

> C. **The Court Has Discretion to Sever Oracle's Permissive Counterclaims.**

Rule 21 of the Federal Rules of Civil Procedure provides that "on motion or on its own, the court may at any time, on just terms . . . sever any claim against a party." FED. R. CIV. P. 21; *Landis v. North American Co.*, 299 U.S. 248 (1936). The Fifth Circuit has stated with respect to Rule 21 that a trial court has "broad discretion to sever issues to be tried before it." *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983); *Bibbs v. Early*, 541 F.3d 267, 274 (5th Cir. 2008); *Brunet v. United Gas Pipeline*, 15 F.3d 500, 505 (5th Cir. 1994). In fact, "the court has discretion to refuse to entertain any counterclaim, when allowing it would unduly complicate the

litigation." *Minute Man Anchors, Inc. v. Oliver Technologies*, 2005 U.S. Dist. LEXIS 38634, *5 (W.D. N.C. 2005) (*quoting* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. 2D § 1420).

In determining whether to grant a motion to sever and effectively order separate trials resulting in separate judgments, courts balance prejudice and juror confusion against efficiency. *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995); *Apache Products Co. v. Employers Insurance*, 154 F.R.D. 650, 660 (S.D. Miss. 1994) (severing claims for sake of convenience). "As part of this inquiry, the court should consider whether an order under Rule 21 would prejudice any party, or would result in undue delay. The court must also be aware of the possibility of jury confusion." 8 FED. PRAC. & PROC. CIV. 3D § 21.02[5] (internal citations omitted).

Once a claim is severed, "it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other." *United States v. O'Neil*, 709 F.2d at 368. A court's severance order is reviewed for abuse of discretion. *Capaci v. Katz & Besthoff, Inc.*, 711 F.2d 647, 665 (5th Cir. 1983); *Shum v. Intel Corp.*, 499 F.3d 1272, 1276 (Fed. Cir. 2007).

### D. Severance Is Necessary To Avoid Delay, Prejudice to i2 and Jury Confusion, and To Promote Efficiency.

Oracle's counterclaims assert different patents and accuse different products than those already in suit and add a new party, raising entirely new factual and legal issues. Adding four Oracle patents, i2's newly accused products, and a third party would delay claim construction until discovery with respect to the new factual and legal issues is complete, prejudicing i2, and would unduly complicate this litigation.

Oracle's counterclaims would push back all upcoming deadlines in the Court's Docket Control Order to allow enough time as would be necessary for the counterclaims to catch up to the same stage of litigation as the current claims.  Oracle delayed filing counterclaims for infringement for one year after the original complaint.  During that time, the parties have produced millions of pages of documents, answered multiple sets of interrogatories, several discovery or third parties, noticed multiple depositions, and began claim construction of terms in i2's patents.

At a minimum, Oracle's counterclaims will require analyzing different patents, different i2 products than those already at issue in the lawsuit, different prior art, would involve different inventors, would require a separate damages analysis, involve separate fact witnesses, and likely would require different experts.  i2 would need sufficient time to prepare its defense against Oracle's counterclaims just as Oracle has had time to prepare its defense up to this point.  So far, Oracle has had one year to prepare its defense from the time of filing the initial complaint on April 29, 2009 to the time the parties exchange proposed terms and constructions on May 17, 2010.

At the current pace of litigation, Oracle's counterclaims would push back all upcoming deadlines in the Court's Docket Control Order, potentially up to one year.  Even if i2 completes these steps in half the time or less, pushing back all upcoming deadlines would unfairly burden the Court, the parties, and the jury, especially considering the permissive nature of these counterclaims and Oracle's opportunities to assert them earlier.  *See, e.g., Roy-G-Biv Corp. v. Fanuc Ltd.*, 2009 U.S. Dist. LEXIS 37809 (E.D. Tex. Apr. 14, 2009) (finding undue delay, in the context of an opposition to a motion to amend a pleading, where defendant asserted two

previously-unasserted patents, one year had lapsed between the initial complaint and motion to amend the pleading, and discovery had already begun).

Moreover, Oracle's counterclaims would prejudice i2 in the current litigation by forcing i2 to undertake an entirely new course of defense one year after filing the complaint and ultimately, by delaying resolution of i2's claims of infringement against its direct competitor for as long as Oracle's counterclaims delay the current schedule. If the Court allows the counterclaims to proceed, i2's current claims would be put on hold while i2 analyzes and answers the counterclaims, develops invalidity contentions, supplements document production requests, analyzes potential defenses such as noninfringement and unenforceability of Oracle's asserted patents, and proposes terms and constructions for Oracle's asserted patents. "It is well established that unrelated claims may be severed to promote the legitimate interest of some of the parties." 8 FED. PRAC. & PROC. CIV. 3D § 21.02[5] (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). Severance is therefore necessary to avoid prejudice to i2.

In addition, Oracle's counterclaims would unduly complicate litigation for the parties and the Court and risk overwhelming and confusing the jury. For example, Oracle's counterclaims add four patents to the eleven patents already in suit. During claim construction, the parties and the Court would address fifteen patents at once related to various technologies. At trial, the parties and the Court would spend a significant amount of time trying to mitigate jury confusion from the various patents and products. As the court reasoned in *Roy-G-Biv*, "severance would simplify an already complex matter." *Id.* at *4. *See also CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505, 506-507 (D. Md. 1995) (granting severance where counterclaims asserted different patents on the same eyeglass frame technology, reasoning that "[s]uch commonality as may exist among the patents is far outweighed by the potential for jury

confusion"). Accordingly, it would be more efficient to continue litigating i2's claims for infringement without delay and litigate Oracle's counterclaims for infringement separately. Severance is therefore necessary to prevent undue delay, complication, and to save the time and effort that would otherwise be spent trying to prevent confusing the jury if Oracle's patents are tried together with the i2 patents currently in suit.

DATED:  May 11, 2010.                        Respectfully submitted,

                                             **McKOOL SMITH, P.C.**

                                             /s/ *Sam Baxter*_____

Sam Baxter, *Lead Attorney*
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
104 East Houston Street, Suite 300
Marshall, Texas  75670
Telephone: (903) 923-9000
Telecopier: (903) 923-9099
Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
Christopher T. Bovenkamp
Texas State Bar No. 24006877
cbovenkamp@mckoolsmith.com
Bradley W. Caldwell
Texas State Bar No. 24040630
bcaldwell@mckoolsmith.com
Justin Nemunaitis
Texas State Bar No. 24065815
jnemunaitis@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044
John B. Campbell
Texas State Bar No. 24036314
jcampbell@mckoolsmith.com
McKool Smith, P.C.
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744
**ATTORNEYS FOR PLAINTIFFS
i2 TECHNOLOGIES, INC. AND
i2 TECHNOLOGIES US, INC.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Rule 5(d) of the Federal Rules of Civil Procedure and Local Rule CV-5(c), all counsel of record deemed to have consented to electronic service were served with a true and correct copy of the foregoing by electronic mail on May 11, 2010.

                                                */s/ David Sochia*_____
                                                David Sochia

**CERTIFICATE OF CONFERENCE**

This motion is opposed. The conference required by Local Rule CV-7(h) was conducted via telephone conference on April 23, 2010. Ted Stevenson and David Sochia of McKool Smith participated on behalf of i2 and William F. Lee and Andrew Grossman of Wilmer Hale participated on behalf of Oracle.

After a discussion of the issues, the relief requested, and potential alternatives to the relief sought, the conference conclusively ended in an impasse, leaving an open issue for the Court to resolve. No agreement could be reached because, following a good faith discussion between the parties, Oracle's counsel, advised that Oracle could not agree to sever Oracle's counterclaims of infringement of United States Patent Nos. 7,107,113, 6,446,204, 7,010,523 and 6,684,207 from the above styled case.

                                                /s/ David Sochia_____
                                                David Sochia