**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| _____ ) | |
| i2 Technologies, Inc., and ) | |
| i2 Technologies US, Inc., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 6:09-cv-194 (LED) |
| v. ) | |
| ) | JURY TRIAL REQUESTED |
| Oracle Corporation, and ) | |
| Oracle America, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |
| ) | |
| Oracle Corporation ) | |
| Oracle America, Inc., ) | |
| and Oracle International Corporation, ) | |
| ) | |
| Counterclaimants, ) | |
| ) | |
| v. ) | |
| ) | |
| i2 Technologies, Inc., ) | |
| i2 Technologies US, Inc., and ) | |
| JDA Software Group, Inc. ) | |
| ) | |
| Counterclaim Defendants. ) | |
| _____) | |

**OPPOSITION TO i2'S MOTION TO SEVER ORACLE'S
COUNTERCLAIMS FOR PATENT INFRINGEMENT**

## TABLE OF CONTENTS

I.     FACTUAL BACKGROUND ...................................................................................1

II.    ARGUMENT .......................................................................................................3

      A.     Oracle Timely And Properly Filed Counterclaims With Its Answer And
       i2's Defective Initial Complaint Is The Cause Of Any Delay ....................3

      B.     i2 Identifies No Good Reason To Sever Oracle's Counterclaims ..............9

      C.     Oracle Proposed, But i2 Rejected, A Fair And Equitable Approach That
       Will Lead To A Timely Resolution Of Each Parties' Claims While
       Serving The Interests Of Judicial Efficiency And Economy ....................14

III.   CONCLUSION ...................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>

*A&E Prods. Group L.P. v. The Accessory Corp.*,
  No. 00 Civ. 7271 (LMM), 2002 WL 1041321 (S.D.N.Y. May 23, 2002)...................... 9

*Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*,
  No. 08-2434, 2009 U.S. Dist. LEXIS 26447 (E.D. Pa. Mar. 26, 2009)......................... 5

*Apache Products Co. v. Employers Ins. of Wasau*,
  154 F.R.D. 650 (S.D. Miss. 1994) ............................................................................. 13

*Applewhite v. Reichhold Chems., Inc.*,
  67 F.3d 571 (5th Cir. 1995) ...................................................................................... 13

*Bernstein v. IDT Corp.*,
  582 F. Supp. 1079 (D. Del. 1984).............................................................................. 5

*Bibbs v. Early*,
  541 F.3d 267 (5th Cir. 2008) .................................................................................... 12

*Brunet v. United Gas Pipeline*,
  15 F.3d 500 (5th Cir. 1994) ...................................................................................... 12

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*,
  985 F. Supp. 640 (E.D. Va. 1997) ........................................................................ 8, 9

*Equal Rights Ctr. v. Equity Residential*,
  483 F. Supp. 2d 482 (D. Md. 2007) .................................................................. 4, 9, 14

*In re Cessna Distrib. Antitrust Litig.*,
  532 F.2d 64 (8th Cir. 1976) ...................................................................................... 6

*Jeanty v. County of Orange*,
  379 F. Supp 2d 533 (S.D.N.Y. 2005)........................................................................ 9

*Landis v. North American Co.*,
  299 U.S. 248 (1936)................................................................................................ 11

*Langer v. Monarch Life Ins. Co.*,
  966 F.2d 786 (3d Cir. 1992)...................................................................................... 6

*Lusk v. Pennzoil United, Inc.*,
  56 F.R.D. 645 (N.D. Miss. 1972).............................................................................. 10

*Microsoft Corp. v. Ion Techs. Corp.*,
  484 F. Supp. 2d 955 (D. Minn. 2007)........................................................................ 5

*Montecatini Edison, S.P.A. v. Ziegler*,
   486 F.2d 1279 (D.C. Cir. 1973) ................................................................................. 4, 7

*State Farm Mut. Auto. Ins. Co. v. Mathis*,
   09-CV-0308-CVE-TLW, 2009 U.S. Dist. LEXIS 117265 (N.D. Okla. Dec. 16, 2009) 6

*Tab Express Int'l, Inc. v. Aviation Simulation Tech., Inc.*,
   215 F.R.D. 621 (D. Kan. 2003)..................................................................................... 9

*United States v. O'Neil*,
   709 F.2d 361 (5th Cir. 1983) ..................................................................................... 12

<u>Treatises</u>

Moore's Answer Guide: Fed. Pretrial Civil Litigation § 4.459.......................................... 6

<u>Federal Rules</u>

Federal Rules of Civil Procedure 12(b) .......................................................................... 6

Federal Rules of Civil Procedure 7 ................................................................................ 3

US1DOCS 7549890v1

i2's Motion to Sever should be denied for three fundamental reasons.  First, and contrary to the suggestion of i2's motion, because i2 violated Federal Rule of Civil Procedure ("Rule") 8 with its original complaint in this case, Oracle filed its counterclaims at the earliest possible time permitted under Rules 7 and 13.  i2 should not be allowed to convert its violation of Rule 8 into a tactical advantage prejudicial to Oracle's counterclaims.  Second, i2 has not and cannot demonstrate the basis required for severance because by proceeding on Oracle's counterclaims, i2 suffers no prejudice not of its own making.  Third, i2's severance proposal is guaranteed to maximize the burdens this Court faces in resolving the fifteen patents now before it.  By contrast, having heard the Court's admonition that the case cannot be tried in its present posture, Oracle has proposed that the parties each select the two "champion" patents that they believe to be their strongest and proceed to trial on those first – with successive trials on the remaining patents to follow only if necessary.  This proposal not only properly balances the equities between the parties, which i2 contends are competitors, but maximizes the likelihood that the parties resolve all of their disputes in a first trial.

For these reasons, as set forth more fully below, Oracle respectfully asks the Court to deny i2's motion in its entirety and order the parties to each select their two "champion" patents to be tried on the existing March 14, 2011 date, with subsequent trials on the remaining patents as necessary thereafter.

## I.  FACTUAL BACKGROUND

On April 29, 2009, i2 filed an initial Complaint for Patent Infringement ("Initial Complaint").  On June 19, 2009, Oracle timely filed its opposed Motion to Dismiss. Recognizing that this motion to dismiss prevented Oracle from filing a pleading in this matter, i2 agreed to postpone the time for which Oracle needed to allege any inequitable

conduct claims against i2 until *after* Oracle filed its answer (the first pleading that Oracle would file).  (Oracle's Unopposed Motion To Extend The Deadline To Plead Inequitable Conduct, Dec. 12, 2009, D.I. 77.)  The Court granted that motion.  (Order Granting Defendant's Motion For Extension of Time, Dec. 22, 2009, D.I. 78.)

On March 29, 2010, the Court granted Oracle's Motion to Dismiss and in the Order made clear the wholesale deficiencies in i2's Initial Complaint (Court Order, Mar. 29, 2009, at 5 (D.I. 79) (emphasis added)):

> Taken as whole, i2's complaint, which asserts eleven patents, fails to identify any asserted claims or any accused products or services for each of the patents-in-suit, fails to identify which patents are indirectly infringed, fails to identify a direct infringer in reference to its indirect infringement claims, does not state a claim for relief that is plausible on its face. *The complaint simply fails to inform Oracle as to what it must defend.*  While Form 18 does not set a high bar for what must be alleged, i2 has not met that bar.

On April 5, i2 filed a First Amended Complaint for Patent Infringement alleging eleven patent claims, and on April 22, 2010, Oracle timely responded with its Answer – Oracle's first pleading filed in this case.  In its Answer, Oracle added necessary party JDA Software Group, Inc. ("JDA") as a counterclaim defendant[1] and asserted counterclaims against i2 and JDA alleging, among other things, the infringement of certain Oracle patents.  i2 and JDA recently answered Oracle's counterclaims. (Counterclaim Defts.' Reply, May 17, 2010, D.I. 100.)

On April 23, 2010, following Oracle's filing of its Answer and counterclaims, the parties met and conferred during which Oracle noted the Court's prior caution regarding

---

[1]     i2 cites Oracle's addition of JDA as one basis justifying severance.  (Mot. to Sever at 2, 8).  This is meritless.  Between i2's Initial Complaint and Amended Complaint, JDA purchased i2 (*id.* at 2), making JDA a necessary party.  Fed. R. Civ. P. 19(a)(1)(B)(ii).  The addition of JDA – who is i2's parent company and represented by the same counsel as i2 – was proper and does not require severance.

the number of patents at issue in this case.  As the Court previously stated upon finding

that the Initial Complaint was defective and granting i2 leave to amend, it "strongly

cautions i2 to narrow its case" because "a patent case involving the current number of

patents is unmanageable at trial."  (Court Order, Mar. 29, 2009, at 6, D.I. 79.)  Prior to

that, upon consideration of the parties' Joint Motion for Entry of Docket Control Order

and Discovery Order, the Court noted, "as i2 Technologies states, it will eventually be

forced to streamline its *Markman* presentation and case so that the important issues are

considered by the Court."  (Court Order, Oct. 6, 2009, at 1, D.I. 46.)

In accordance with the Court's concerns, Oracle proposed to i2 a methodology to

make this case manageable for both parties at trial.  Specifically, Oracle proposed that

each party select two of its asserted patents on which to proceed to trial and stay the

matter on the other pending issues.  Against the explicit advice of this Court, i2 rejected

Oracle's proposal, refused to limit its claims, and advised Oracle that it would filed the

instant motion to sever – a motion that will maximize the likelihood that all fifteen of the

patents will remain at issue.

## II.    ARGUMENT

### A.    Oracle Timely And Properly Filed Counterclaims With Its Answer And i2's Defective Initial Complaint Is The Cause Of Any Delay

The principal contention of i2's motion is that Oracle should have asserted its

counterclaims as a stand alone filing "at the same time" Oracle filed its now-granted

Motion to Dismiss.  (*See* Mot. to Sever at 7.)  i2 advances this contention, however,

without any supporting case or other authority.  The reason is because the law is contrary

to i2.  In fact, as multiple Courts have repeatedly held, Federal Rules of Civil Procedure 7

and 13 bar the filing of a "counterclaim" as a stand alone document separate from a

party's initial "*pleading*."  Because, as this Court held, Oracle could not have answered

i2's deficient Initial Complaint until i2 corrected its Rule 8 defects, it was not possible for

Oracle to assert counterclaims at any time earlier than it did as a matter of law.  As a

result, any delay in Oracle's asserting its counterclaims is solely and entirely attributable

to i2's refusal to voluntarily correct its Rule 8 violation when Oracle first raised this

problem to i2.

       In this regard, i2's unexplained citation to Rule 13 is misplaced.  Rule 13 governs

the filing of both compulsive and permissive counterclaims, and expressly provides that

they may only be set forth in a "pleading."  Rule 13 states for compulsory counterclaims

that "[a] *pleading* must state as a counterclaim . . . ." and, for permissive counterclaims

that "[a] *pleading* may state as a counterclaim . . . ." Fed. R. Civ. P. 13 (emphasis

added).  By allowing a party to allege counterclaims, the objective of Rule 13 "is to

provide complete relief to the parties, to conserve judicial resources and to avoid the

proliferation of lawsuits."  *Id; see also Montecatini Edison, S.P.A. v. Ziegler*, 486 F.2d

1279, 1282 (D.C. Cir. 1973) ("In effect, Rule 13(b) confers upon a litigant the right to

have his permissive counterclaim heard and determined along with the claims of his

adversary."); *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md.

2007) (recognizing a presumption in favor of nonmoving party that "claims in a case will

be resolved in a single trial and not be severed").[2]

---

[2]      i2's also asserts that, rather than file counterclaims in the instant case, Oracle
should have filed a "separate action and sought consolidation at a later time. " (Mot. to
Sever at 7.)  This illogical suggestion runs directly counter to the rationale underlying
Rule 13 and seeks to deprive Oracle of a basic right afforded all litigants under the
Federal Rules.  i2 has failed to cite any authority supporting its view that Oracle was
obligated to commence a new action and seek consolidation, as opposed to merely
alleging counterclaims in the instant case, as the Rules favor.

Whereas Rule 13 requires that any counterclaims must be stated in a "pleading,"

Rule 7 defines the "only" pleadings allowed under the Federal Rules:

> (a) **PLEADINGS.  *Only*** these pleadings are allowed:
>
> > (1)   a complaint;
> > (2)   ***an answer to a complaint***;
> > (3)   an answer to a counterclaim designated as a counterclaim;
> > (4)   an answer to a crossclaim;
> > (5)   a third-party complaint;
> > (6)   an answer to a third-party complaint; and
> > (7)   if the court orders one, a reply to an answer.

Fed. R. Civ. P. 7 (emphasis added).

Rules 7 and 13 thus ***prohibit*** what i2 contends Oracle should have done here,

namely the filing of counterclaims independent from an answer.  This prohibition has

been recognized by every reported court decision that Oracle could locate addressing the

issue, as well as numerous commentators.  *See, e.g., Microsoft Corp. v. Ion Techs. Corp.*,

484 F. Supp. 2d 955, 965 (D. Minn. 2007) (dismissing counterclaims and explaining that

"[c]ounterclaims, however, must appear in a pleading, and a separate document that

contains counterclaims is not a permissible pleading"); *Bernstein v. IDT Corp.*, 582 F.

Supp. 1079, 1089 (D. Del. 1984) (holding that pursuant to Rules 13(a) and 7(a),

counterclaims and crossclaims filed without an answer were subject to dismissal); *Allied*

*Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*, Civ. Action No. 08-2434, 2009 U.S. Dist.

LEXIS 26447, at *4-5 (E.D. Pa. Mar. 26, 2009) ("Because counterclaims raised pursuant

to Rule 13 must be stated in a pleading and because Rule 13 is the only federal rule that

addresses how to raise a counterclaim, parties who wish to raise a counterclaim must do

so in a pleading. . . .  Because a counterclaim is not itself a pleading, to state a

counterclaim consistently with Rule 7(a) and Rule 13, a party must file the counterclaim

- 5 -

*as part of* a recognized pleading, *i.e.*, an answer."); *cf. Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 810 (3d Cir. 1992) (upholding district court's finding that separately filed cross-claim was procedurally improper, and explaining that "Federal Rules of Civil Procedure 12(b) and 13(g) require that cross-claims be stated in a pleading, and under Rule 7(a) cross-claims should be contained in a defendant's answer."); *In re Cessna Distrib. Antitrust Litig.*, 532 F.2d 64, 67 & n.7 (8th Cir. 1976) (explaining that defendants "could assert the cross-claim only in their answer" because a "cross-claim must be stated in a pleading [and] it is not itself a pleading"); *State Farm Mut. Auto. Ins. Co. v. Mathis*, 09-CV-0308-CVE-TLW, 2009 U.S. Dist. LEXIS 117265, at *3-4 (N.D. Okla. Dec. 16, 2009) (dismissing crossclaim as improperly filed because "a standalone crossclaim is not itself a pleading.  Therefore, in general, a crossclaim must be asserted in an answer."); 2-7 Moore's Fed. Practice - Civil § 7.02[3][b] (2010) ("Counterclaims and crossclaims are not separate pleadings, but are claims for relief that may be set forth in answers to complaints."); 1-4 Moore's Answer Guide: Fed. Pretrial Civil Litigation § 4.459[10][a] (2009) ("Counterclaims must be raised in a responsive pleading, such as the answer to the complaint or a reply to a counterclaim.").  Oracle notified i2 of this authority in advance of this motion, and thus i2 apparently could find no authority to the contrary either.

i2's attempt to use Rule 12 as a basis for its motion is likewise misplaced.  Rule 12 makes clear that a 12(b)(6) motion to dismiss a complaint for failure to state a claim "*must* be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P 12(b), (b)(6) (emphasis added).  Rule 12(e) is equally as clear that a defendant's motion for a more definite statement filed in response to a complaint "*must* be made before filing a responsive pleading. . . ."  Fed. R. Civ. P 12(e).  As the Court held in granting Oracle's

Motion to Dismiss, i2's Initial Complaint "fail[ed] to inform Oracle as to what it must defend."  Therefore, Oracle was not required to answer the Initial Complaint, and it is i2's filing of a defective complaint that is the cause of any delay.  i2 now seeks to shift the blame to Oracle, but Oracle properly exercised its rights under Rule 12 to file its meritorious Motion to Dismiss, and should not now be prejudiced for so doing.

Were i2 to succeed in severing Oracle's well-founded counterclaims, however, prejudice is exactly what would result.  As an initial matter, i2 steadfastly contends in other contexts that its products compete with those of Oracle.  To permit i2 to use its violation of Rule 8 as a basis to defer adjudication of its own products' patent infringement, while at the same time keeping Oracle's products in jeopardy, would be to reward i2 for its attempt to keep Oracle in the dark with its deficient Complaint.  Oracle also would continue to suffer the on-going harm caused by i2's infringement of Oracle's patents, and any potential redress would be delayed, while i2 would be allowed to proceed to trial and seek relief solely on its claims.  Such a result would not only be inequitable, it would run counter to the basic tenets of Rule 13(b).  *See Montecatini*, 486 F.2d at 1282 ("In effect, Rule 13(b) confers upon a litigant the right to have his permissive counterclaim heard and determined along with the claims of his adversary.")

Furthermore, i2's current contentions are directly contrary to the position it took earlier in the case.  Late last year i2 recognized the limits governing when counterclaims can be asserted by agreeing to postpone the time for Oracle to allege any inequitable conduct counterclaims against i2 until *after* Oracle filed its answer (Oracle's first pleading in the case).  (Oracle's Unopposed Motion To Extend The Deadline To Plead Inequitable Conduct, Dec. 12, 2009, D.I. 77.)  The Court granted that unopposed motion.

(Order Granting Defendant's Motion For Extension of Time, Dec. 22, 2009, D.I. 78.) Having acknowledged the rules governing when counterclaims can be served just a few months ago, i2 should not now be heard on arguments that are directly contrary to those clear tenets.

In addition to the above failings, i2 also misstates the court's holding in *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 643 (E.D. Va. 1997), which actually undercuts i2's assertion that Oracle should have alleged its counterclaims when it filed its Motion to Dismiss.  The *Dee-K* court *never* held that "no defense under Fed. R. Civ. P. 12(b) is waived by the assertion of a counterclaim, whether permissive or compulsory."  (Mot. to Sever at 7.)  Rather, in rejecting a plaintiff's claim that a defendant had waived a previously asserted venue defense by subsequently filing an answer with counterclaims, the *Dee-K* court merely quoted a legal treatise in recognizing that "though courts in the past have split on the issue, 'the trend in more recent cases is to hold that no Rule 12(b) defense is waived by the assertion of a counterclaim, whether permissive or compulsory.'"  985 F. Supp at 643 (citing 5A Wright & Miller, *Federal Practice and Procedure*, § 1397, at 790 (2d ed. 1990)).  Beyond being readily distinguishable on its facts, the district court in *Dee-K* explicitly noted, "Of course, [defendant] was *not required to file an answer at all at the time* it did so, given that its venue objection was still pending."  *Id.* at 644 n.9 (emphasis added).  Despite i2's assertion to the contrary, *Dee-K* makes it clear that Oracle was not required to answer and assert counterclaims at the time that its meritorious Motion to Dismiss was pending.

Indeed, had Oracle answered i2's defective Initial Complaint and filed counterclaims while Oracle's Motion to Dismiss remained pending, i2 would almost

- 8 -

certainly have claimed that Oracle had waived its Rule 8 and 12 challenges with such a filing.  This is the very sort of "Hobson's choice" –  file an answer and counterclaims and forego a viable defense, or file a meritorious motion to dismiss and face severance of well-founded counterclaims filed as part of a timely answer to an amended complaint – that the Federal Rules seek to avoid.  *See id.* at 643-44.  Under the present circumstances, Oracle timely asserted its counterclaims with its Answer after, and not before, i2 filed its First Amended Complaint.  Thus, i2's motion should be denied.

### B.      i2 Identifies No Good Reason To Sever Oracle's Counterclaims

Although Rule 21 provides that a court may sever any claim against a party, Fed. R. Civ. P. 21, "[s]everance is a 'procedural device to be employed only in exceptional circumstances.'" *A&E Prods. Group L.P. v. The Accessory Corp.*, No. 00 Civ. 7271 (LMM), 2002 WL 1041321, *2 (S.D.N.Y. May 23, 2002) (quoting *Hatfield v. Herz*, 9 F. Supp. 2d 368, 373 (S.D.N.Y. 1998)).  In determining whether the exceptional circumstances warranting severance of a claim are present, courts typically consider four primary issues: (1) convenience of the parties, (2) avoiding prejudice, (3) promoting expedition and economy, and (4) the separability of law and logic.  *Tab Express Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 623 (D. Kan. 2003); *see also Equal Rights Ctr.*, 483 F. Supp 2d at 489 (setting forth similar factors).  Courts have also held that the burden is on the moving party to show that: "(1) it will be *severely* prejudiced without a separate trial; and (2) the issue to be severed is *so distinct and separable* from the others that a trial of that issue alone may proceed without injustice."  *Equal Rights Ctr.*, 483 F. Supp 2d at 489 (citing *Jeanty v. County of Orange*, 379 F. Supp 2d 533, 548-49 (S.D.N.Y. 2005) (emphasis added and internal quotation omitted); *Lusk v. Pennzoil*

*United, Inc.*, 56 F.R.D. 645, 647 (N.D. Miss. 1972) (citing *Swofford v. B&W Inc.*, 336 F. 2d 406, 415 (5th Cir. 1964))).

i2 has failed to meet its burden of showing that it will suffer "severe prejudice" absent a separate trial.  A potential trial delay of several months caused by i2's failure to file a proper complaint at the outset of this case does not amount to severe prejudice, much less an inconvenience so great that it requires the delay of trying the issues raised in Oracle's counterclaims by potentially years.  Severance will also cause Oracle to suffer the very prejudice that i2 protests, *i.e.*, on-going harm caused by i2's continuing infringement.  (Mot. to Sever at 2, 10.)

In addition, severance of Oracle's patent counterclaims will undermine judicial economy by almost guaranteeing separate trials of related patents.  It is highly likely that a trial on the merits of each parties' "champion" patents, however, would resolve the remaining disputes between the parties.

The same efficiency concerns that favor consolidation of related patent suits counsel against severance here.  The parties' respective patents relate to the same general technologies, as well as to some of the same products.  For instance, both Oracle's '204 patent and i2's '485 patent relate to computer security and access control, and i2's Rhythm DNA Security product is alleged both to practice i2's '485 patent, and to infringe Oracle's '204 patent.  Similarly, document production and witnesses will likely also overlap because overlapping products and technologies are relevant to both parties' claims.  In fact, Edward Sitarski, one of the named inventors on Oracle's '113 patent, is already identified in Oracle's initial disclosures as a witness knowledgeable about Oracle's e-Business Suite – a product accused of infringing i2's asserted patents.

- 10 -

Likewise, Oracle's business, marketing, and finance documents and witnesses overlap, as will likely be the case for i2.  Permitting the parties' respective patent infringement claims to be resolved in a single suit will eliminate the inefficiency and expense of engaging in duplicative discovery, multiple depositions of the same witnesses and experts, and educating multiple juries on the overlapping technologies.

In contrast to this significant overlap, i2 offers no factual support whatsoever for its generalized assertion that the counterclaims involve "different" patents, i2 products, prior art, inventors, and experts, and would require "separate" damages analysis and fact witnesses.  (Mot. to Sever at 9.)  Lacking a substantiated factual basis, i2 has failed to meet the high burden required for severance.

Moreover, the cases relied upon by i2 do not support its requested relief.  For example, in *Landis v. North American Co.*, 299 U.S. 248 (1936), the Supreme Court stated – albeit in the distinct context of whether a court should stay proceedings in separately filed actions involving different plaintiffs, not the severance of a counterclaim – a court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55 (1936).  The Court continued, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255.

Applying these principles here, it is clear that severance of Oracle's counterclaims, while allowing i2 to proceed solely on its own claims, would fail to maintain this even balance called for by the *Landis* Court because it would serve only i2's interests, while prejudicing Oracle's ability to seek timely relief.  In addition, separate trials would undermine the economy of time because, in all likelihood, a single trial addressing the merits of each party's claims would resolve this matter.  Based on these facts, i2 has failed to show that this case presents a rare circumstance justifying a severance and stay of Oracle's claims.

i2's citation to *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983) also is misplaced.  (*See* Mot. to Sever at 7.)  Contrary to i2's assertion, the *O'Neil* court did *not* state, as a general proposition, that "a trial court has 'broad discretion to sever issues to be tried before it.'"  Rather, the *O'Neil* court was merely quoting from a trial court's summary judgment order in an effort to determine whether the trial court had in fact severed certain claims.  *Id.  See also id.* at 371-72 (concluding that the trial court's severance was likely improper, but nonetheless affirming severance *only* because the government was too late in seeking appellate review).  Similarly contrary to i2's claim, the court in *Bibbs v. Early*, 541 F.3d 267, 274 (5th Cir. 2008), did *not* state that "a trial court 'has broad discretion to sever issues to be tried before it.'"  Rather, the *Bibbs* court held that a "district court has broad discretion in determining the propriety of *joining* . . . a particular party as a defendant."  *Id.* (internal quotation omitted) (emphasis added).[3] i2's repeated misstatement of the law in its favor should be rejected.

---

[3] Although the court in *Brunet v. United Gas Pipeline*, 15 F.3d 500, 505 (5th Cir. 1994), did state that a trial court has broad discretion to sever issues to be tried before it, the severance at issue there dealt with a moot claim, which is certainly not the case here.

- 12 -

i2's reliance on *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995), is similarly misguided.  (*See* Mot. to Sever at 8.)  Indeed, in *Applewhite*, the district court dismissed a lawsuit – not counterclaims – subsequently filed by a different set of plaintiffs that sought joinder with another pending case.  *Id.*  This is an entirely different set of circumstances than the present matter.  In any event, the Fifth Circuit merely remanded the case for further findings, noting that, although a court has discretion to sever claims pursuant to Rule 42(b) in furtherance of convenience or economy, or to prevent injustice, this discretion "should be exercised after an examination of the individual case."  *Id.*

Also misplaced is i2's reliance on *Apache Products Co. v. Employers Ins. of Wasau*, 154 F.R.D. 650, 660 (S.D. Miss. 1994).  (*See* Mot. to Sever at 8.)  There, the readily distinguishable issue was whether severance should be granted "for the purpose of facilitating transfer," *id.*, not severance of timely filed counterclaims.  Regardless, the court explicitly noted that although it "has the authority to sever . . . so that it can transfer the claims, [it] does not necessarily mean that the court should exercise that authority, even though transfer would be manifestly more convenient for the trial of the claims . . . for it is only when the administration of justice would be served that this procedure should be employed."  *Id.*  The relevant examination here makes clear that severance of Oracle's counterclaims would inequitably and unfairly serve only i2's interests, while unduly prejudicing Oracle.  Under these circumstances, severance does not serve the administration of justice.  i2's motion should be denied.

- 13 -

**C.    Oracle Proposed, But i2 Rejected, A Fair And Equitable Approach That Will Lead To A Timely Resolution Of Each Parties' Claims While Serving The Interests Of Judicial Efficiency And Economy**

The potential delay of which i2 now complains is a problem of its own making. Nonetheless, i2 continues to proceed in manner directly contrary to the Court's instructions by maintaining assertion of its eleven patents against Oracle.  i2 apparently perceives some tactical advantage in continuing to assert such an unworkable number of patents, and appears poised to ultimately, and improperly, wait until the very last moment to drop most of its claims and proceed to trial with less a manageable number of patents and claims.  Worse still is that i2 is using the unrealistic number of its current allegations to claim "unfair prejudice" if Oracle's patent infringement claims remain in the case, proclaiming that this would "unduly complicate" the litigation.  (Mot. to Sever at 10.) All of this is improper and unreasonable, particularly where it is i2's simultaneous pursuit of eleven patent claims that has unduly complicated the case.

In an attempt to structure this case in a way that maximizes the likelihood of efficient resolution, Oracle has proposed that the parties limit this proceeding to two initial "champion" patents per side.  i2 flatly refused. Oracle's suggestion, however, is fair to both parties, and will be the most effective and efficient use of the Court's resources and the parties' time and money.  A single trial that addresses the merits of a limited number of each parties' patent infringement claims will almost certainly facilitate a resolution of the parties' other pending claims.  Thus, Oracle submits that the parties should continue to focus on addressing the merits of their respective sides, and i2 should not be permitted to convert its own violation of Rules 8 and 12 into a tactical advantage that will be more likely to require two trials and will certainly run counter to the goals of judicial efficiency and economy.  *See Equal Rights Ctr.*, 483 F. Supp. 2d at 489

- 14 -

(recognizing presumption in favor of non-moving party that "claims in a case will be resolved in a single trial and not be severed").

Oracle respectfully requests that, rather than sever Oracle's counterclaims, the Court exercise its discretion to exert control over its docket in the manner proposed by Oracle. Namely, at the status conference scheduled for May 24, 2010, the Court should compel the parties to limit their asserted patents to two per side and the asserted claims to five per side. Doing so would allow the parties to focus their energies on addressing the merits of their respective cases (including limiting the issues for *Markman* and during discovery), and allow the issues to be fully resolved by a single trial. Oracle also has no objection to a continuance of the current trial date to the extent that i2 believes it needs additional time for discovery regarding Oracle's counterclaims. i2, however, has insisted on proceeding to trial as currently scheduled, although on its eleven patent claims. Clearly, this approach serves only i2's interests and is unfairly prejudicial to Oracle, and also demonstrates the fallacy of i2's position. i2's position that it can proceed on eleven patents and approximately 181 asserted claims within the current schedule, but will not have time for only four patents and ten claims, is unreasonable.

## III.    CONCLUSION

For all the above reasons, i2's Motion to Sever Oracle's counterclaims should be denied.

Dated:  May 20, 2010                     Respectfully submitted,
                                        */s/ James M. Dowd, with permission by*
                                        *Michael E. Jones*
                                        Michael E. Jones
                                        State Bar No. 10929400
                                        mikejones@potterminton.com
                                        Potter Minton PC
                                        110 N. College, Suite 500
                                        P.O. Box 359

Tyler, TX 75710-0359
Tel.:  (903) 597-8311
Fax:  (903) 593-0846

Of Counsel:

WILMER CUTLER PICKERING HALE
      AND DORR LLP

William F. Lee
60 State Street
Boston, MA 02109
Tel.:  (617) 526-6000
Fax:  (617) 526-5000

James Dowd
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel.:  (213) 443-5300
Fax:  (213) 443-5400

Andrew Grossman
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel.:  (213) 443-5300
Fax:  (213) 443-5400

Mark Selwyn
1117 S. California Avenue
Palo Alto, CA 94304
Tel.:  (650) 858-6000
Fax:  (650) 858-6100

Tonya Robinson
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.:  (202) 663-6000
Fax:  (202) 663-6363

**ATTORNEYS FOR COUNTERCLAIMANTS
ORACLE CORPORATION, ORACLE
AMERICA, INC., AND ORACLE
INTERNATIONAL CORPORATION**

- 16 -

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically on May 20, 2010, in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by facsimile on this same date.

*/s/ Michael E. Jones*
Michael E. Jones

- 17 -