# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| i2 TECHNOLOGIES, INC. and<br>i2 TECHNOLOGIES US, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>ORACLE CORPORATION and<br>ORACLE AMERICA, INC.<br><br>Defendants. | § § § § § § § § § § § § | CASE NO. 6:09 CV 194<br>PATENT CASE |

## MEMORANDUM OPINION AND ORDER

Defendants Oracle Corporation and Oracle USA, Inc.'s[1] (collectively "Oracle") Motion to Transfer Venue (Docket No. 35) is before the Court. Having considered the parties' written submissions, the Court **DENIES** the motion.

## BACKGROUND

i2 Technologies, Inc. and i2 Technologies US, Inc. (collectively "i2") brought this suit for patent infringement against Oracle. i2 accuses Oracle of infringing eleven of its United States patents. After briefing on this motion was complete, Oracle and Oracle International Corporation counterclaimed and asserted four of their own patents against i2 and its parent company, JDA Software Group. At a recent status conference, the parties agreed to try this case in stages. In the first stage, i2 will proceed against Oracle on five i2 patents, and Oracle will proceed against i2 on one Oracle patent. The remaining patents have been severed to a separate case and are proceeding with document discovery only. Aside from the necessary document production, the case on the

---

[1] Oracle America, Inc. has been substituted as a party for Oracle USA, Inc. (Docket No. 91).

severed patents is stayed. Docket No. 128.

The i2 entities' principal places of business are in Dallas, Texas. JDA's principal place of business is in Scottsdale, Arizona. The Oracle entities' principal places of business are in Redwood City, California. Oracle moves to transfer this case to the Northern District of California.[2]

## APPLICABLE LAW

Defendants argue that they are entitled to transfer under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS*

---

[2] In its reply brief, Oracle mentions transferring this case to the Northern District of Texas. Oracle has not provided an analysis of the § 1404(a) factors for transfer to the Northern District of Texas. Accordingly, the Court does not consider that issue properly before it.

*Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314-15. Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

## ANALYSIS

It is undisputed that this case could have been brought in the Northern District of California and thus could be transferred there under § 1404(a).

### *The Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will turn upon which party, usually the

accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d at 1345. However, documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

Oracle is located in Redwood City, California and thus contends its documents are more conveniently located to the Northern District of California. i2 is located in Dallas, Texas and thus contends its documents are more conveniently located to the Eastern District of Texas. JDA is located in Scottsdale, Arizona, which is approximately 350 miles closer to the Northern District of California than to this District. Scottsdale is still over 750 miles from the Northern District of California, and JDA will be somewhat inconvenienced to produce the documents in either District. While generally defendants bear the heavier burden of document production in a patent case, *see In re Nintendo*, 589 F.3d at 1199, i2 contends that it will have a large number of documents to produce. Additionally, i2 must now also defend against Oracle's assertion of its own patents.

In light of the fact that both sides are now asserting patents and defending against patents and that both sides' documents are located in or near their headquarters, which are near their respective preferred venues, and in either venue JDA will produce its documents for trial far from its principal place of business, this factor is fairly neutral in the transfer analysis.

***The Availability of Compulsory Process to Secure the Attendance of Witnesses***

This factor will weigh more heavily in favor of transfer when more third-party witnesses

reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

Both sides contend that their former employees, inventors, or developers have relevant information about the case and that these individuals, though no longer affiliated with a party, generally remain located in either northern California or the Dallas/East Texas area. Oracle contends that the Court will not have subpoena power over some of i2's non-party witnesses who are in the Dallas area. Dallas is just under 100 miles from this Court. However, depending on where exactly the witness is located in the Dallas area, the Court may not have absolute subpoena power over some of i2's witnesses since parts of the Dallas area fall outside the Court's 100-mile reach. Thus, at most each venue will have absolute subpoena power over only one party's witnesses, and this Court may not have absolute subpoena power over all of i2's witnesses. While the Court may not have absolute subpoena power, for trial the Court would weigh any Rule 45 motions to quash or modify in light of the necessity for the trial testimony, inconvenience to the witness, and extent to which the witness is outside the 100-mile radius, recognizing that the Court does have authority to compel anyone in the state to attend trial. Accordingly, this factor only slightly weighs in favor of transfer.

### *The Cost of Attendance for Willing Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis,

irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204, n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is

discounted for purposes of the "100 mile rule" analysis. *Id.* (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

In cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper. *Id.* at 1344. Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in the transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Id.* at 1344–45.

Most of Oracle's witnesses are located within the Northern District of California. Some of i2's witnesses are located within the Eastern District of Texas, and most of i2's remaining witnesses are located just outside of it in the Dallas area. Thus, the Northern District of California is significantly more convenient for Oracle's witnesses, and the Eastern District of Texas is significantly more convenient for i2's witnesses. The two Districts are approximately 1800 miles apart, so if trial is held in either District one side would have to travel about 1800 miles to attend trial.

JDA, and presumably its witnesses, is located in Scottsdale, Arizona, approximately 350 miles closer to the Northern District of California than the Eastern District of Texas, but still over 750 miles from the Northern District of California. Thus, the Northern District of California is slightly more convenient to travel to for JDA's witnesses. However, JDA was brought into the case after briefing on this motion was complete, and therefore the Court cannot assess the convenience of JDA's witnesses.

This factor is neutral. Regardless of where trial is held, one side will have to travel halfway across the country.

***Other Practical Problems***

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *In re Volkswagen III,* 566 F.3d 1351. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*").

i2 contends that this factor favors denying transfer since i2 previously had a patent case involving some of the patents-in-suit here before another Judge in this District. As that Judge is not presiding over this case and this case was not filed in a Division from which that Judge draws cases, those patents' previous history in this District is not relevant. Accordingly, this factor is neutral.

***The Administrative Difficulties Flowing from Court Congestion***

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d 1347. This factor appears to be the most speculative, and this factor alone should not outweigh other factors. *Id*. While the parties argue about which District typically resolves cases more quickly, this factor is the most speculative. Accordingly, the Court considers this factor neutral.

***The Local Interest in Having Localized Interests Decided at Home***

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee

and transferor venues. *See In re Volkswagen I*, 371 F.3d at 206. Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

As Oracle is located within the Northern District of California, that District has an obvious strong local interest in hearing this case. i2 is located just a few miles outside the Eastern District of Texas. Thus, it is quite likely that residents of the District work for i2 or have other connections to i2 and have an interest in resolution of this suit. Accordingly, this factor is neutral or at most only slightly favors transfer.

***The Familiarity of the Forum with the Law that Will Govern the Case*** and ***Avoidance of Unnecessary Problems of Conflict of Laws***

These factors are not applicable to this case.

## CONCLUSION

This case presents a fairly simple transfer analysis. Oracle is located in the Northern District of California and seeks transfer to there. i2 is a Dallas-based company, located just outside the Eastern District of Texas, where it has chosen to bring suit. JDA, an i2-related company who Oracle brought into the suit long after filing the motion to transfer, is located 350 miles closer to the Northern District of California, but still 750 miles from it. Thus, Oracle seeks to move the case from a venue convenient to the plaintiff to one convenient for the defendant. The Court will not substitute

9

Oracle's convenience for i2's.

This case is unlike *HTI IP LLC v. DriveOK, Inc.*, where this Court granted a motion to transfer. *See* 6:09cv370 Docket No. 135, 2010 WL 3075200. In *HTI*, transfer was sought to one of the plaintiff's home forums, and no party's principal place of business was in Texas. *HTI*'s only connection to Texas or the Eastern District was that three potential witnesses resided in Texas.

As i2 has shown that this District is more convenient for it and its witnesses, Oracle has not shown that the Northern District of California is the clearly more convenient District for most of the parties and witnesses. Accordingly, the Court **DENIES** Oracle's motion to transfer.

**So ORDERED and SIGNED this 17th day of August, 2010.**

**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**