1IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| i2 TECHNOLOGIES, INC. and § | | |
| i2 TECHNOLOGIES US, INC. § | | |
| § | | |
| Plaintiffs, § | CASE NO. 609 CV 194 | |
| § | PATENT CASE | |
| vs. § | | |
| § | | |
| ORACLE CORPORATION and ORACLE § | | |
| AMERICA, INC. § | | |
| § | | |
| Defendants. | | |

**MEMORANDUM OPINION**

This Memorandum Opinion construes the terms in United States Patent No. 5,930,156 (the "'156 patent").[1]

**APPLICABLE LAW**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*,

---

[1] In the Court's previous Order construing claims, based on the parties' filings, the Court provided that claims 1, 2, 4 8, 9, 10, 11, 12 of the 'l56 patent were not pursued and subsequently were withdrawn. Docket No 257. The parties subsequently filed a notice clarifying they were still pursing claims 3, 5, 6, and 7 of the '156 patent. Docket No. 258.

1

388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed

meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

# THE '156 PATENT

The '156 patent is directed to a computer software system for modeling a process, for example, a manufacturing process used to produce a product. The modeling process includes an operation model, a buffer model, and a resource model. The operation model represents an activity that can be performed by a process; the buffer model represents rules for controlling the flow of materials between activities; and the resource model represents the capacity available for use in performing an activity and rules for allocating capacity to the activity. Accordingly, these process models are created using three primary model types: an operation model type, a buffer model type, and a resource model type. A model type can be customized and creates a model by utilizing a template or a base set of fields and semantics. '156 patent at 3:38-39, 1:67-2:1. A process model is formed by a plurality of operation models, each specifying the buffer models from which material is consumed and buffer models to which material is supplied, and the resource models having capacities used in performing the activity specified by the operation model. *See* '156 patent at claim 1. Thus, both material and capacity usages are simultaneously represented in the process model.

# THE '156 PATENT

**"operation model type," "buffer model type," and "resource model type"**

The term "operation model type" appears in claims 1, 8, and 10; "buffer model type" appears in claims 1, 3, 4, 5, and 8; and "resource model type" appears in claims 2, 5, 9, and 11 of the '156 patent.[2] i2 proposes "a base set of fields and semantics for representing an operation," "a base set of fields and semantics for representing a buffer," and "a base set of fields and semantics for representing a resource," respectively. Oracle proposes "a model used as a template by a user to

---

[2] Although "operation model type" does not appear in the asserted claims of the '156 patent, the asserted claims depend from claim 1.

create operation models," "a model used as a template by a user to create buffer models," and "a model used as a template by a user to create resource models," respectively.

i2 argues the specification identifies that each model type comprises a plurality of fields defining attributes and specifies a base set of fields and semantics. *See* '156 patent at 1:62-2:1 ("[t]he operation model type, buffer model type, and resource model type each comprise a plurality of fields defining attributes . . . The model type specifies a base set of fields and semantics[.]") i2 contends Oracle's proposed constructions improperly add a method step into an apparatus claim ("used as a template by a user to create . . . models").

Oracle argues the patentee described the model types as templates used to create an operation model, a buffer model, and a resource model in every embodiment of the invention. *See id.* at 3:33-42. Accordingly, Oracle contends proper constructions require the feature of user involvement.

Oracle's constructions impose a method step limitation, which is improper. *See IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). Construing the terms to reflect their functional capabilities, which is supported by the specification, properly restricts the constructions to apparatus limitations. The specification indicates that a "model type" is a template. *See e.g.* '156 patent at 3:38-39 ("A user uses a model type as a template to create a model."). Although the specification does describe that a "model type" specifies a base set of fields and semantics, the claims otherwise define model type as "having a plurality of fields defining attributes." *Id.* at 10:42-43. Construing the terms as meaning "a template for creating a model" adheres more closely to the written description in the specification and the claims; therefore, the Court modifies Oracle's constructions. The Court construes "operation model type," "buffer model type," and "resource model type" as "a template for creating operation models," "a template for

5

creating buffer models," and "a template to create resource models," respectively.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's interpretations of the claims are set forth in a table as Appendix A.

**So ORDERED and SIGNED this 26th day of January, 2011.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

# Appendix A

**'156 PATENT**

**Agreed Terms**

| CLAIM TERM | COURT'S CONSTRUCTION |
|---|---|
| *operation model* [All asserted claims] | a model that represents an activity that can be performed by a process |
| *buffer model* [All asserted claims] | a model that represents rules for controlling the flow of material between activities |
| *resource model* [claims 2, 5, 8, 9, 11] | a model that represents capacity available for use in performing an activity and rules for allocating capacity to the activity |

**Disputed Terms**

| CLAIM TERM | ORACLE'S PROPOSED CONSTRUCTION |
|---|---|
| *operation model type* [Claims 1, 8, 10] | a template for creating operation models |
| *buffer model type* [Claims 1, 3, 4, 5, 8, 10] | a template for creating buffer models |
| *resource model type* [Claims 2, 5, 9, 11] | a template to create resource models |